IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| FELICIA MONAE ROBERTSON, | CASE NO. 5:23-cv-866 |
| Plaintiff, |  |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Felicia Monae Robertson filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits and Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 11. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural history**

In August 2021, Robertson filed an application for Disability Insurance Benefits and Supplemental Security Income alleging a disability onset date of May 15, 2020,[1] and claiming she was disabled due to scoliosis (sideways curve of the spine), missing left thumb, and a left arm that "does not extend all the

---

[1]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

way." Tr. 16, 57, 64, 217. The Social Security Administration denied Robertson's application and her motion for reconsideration. Tr. 55–56, 71–72. Robertson then requested a hearing before an Administrative Law Judge (ALJ). Tr. 116.

In April 2022, an ALJ held a hearing. Robertson and a vocational expert testified. Tr. 30–54. The next month, the ALJ issued a written decision finding that Robertson was not disabled. Tr. 16–25. The ALJ's decision became final on March 13, 2023, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Robertson filed this action on April 25, 2023. Doc. 1. She asserts the following assignments of error:

> 1. The ALJ's RFC finding is unsupported by substantial evidence because, having found mild mental limitations at step two of the sequential evaluation process, the ALJ inexplicably failed to consider these limitations in his RFC analysis. This is harmful error, as it directly impacted the ALJ's finding at step five.
>
> 2. The ALJ's RFC finding is unsupported by substantial evidence because the ALJ failed to properly discuss the supportability and consistency factors with respect to the opinion of the consultative examiner, Jenna Borys, D.O., in accordance with the applicable regulations and caselaw.

Doc. 10, at 2.

**Evidence**

*Personal and vocational evidence*

Robertson was born in 1990 and was 29 years old on her alleged disability onset date. Tr. 24. She completed twelfth grade and used to work as a cashier and housekeeper. Tr. 218.

*Medical and educational evidence*[2]

*Physical conditions:* A treatment note states that Robertson had spinal fusion surgery in 2007, when she was 17 years old. Tr. 19, 273. In 2019, she went to the emergency room for abdominal pain and reported a history of scoliosis and chronic back pain, although she denied back pain that day. Tr. 273.

In February 2021, Robertson saw Jenna Borys, D.O., for a consultative exam at the agency's request. Tr. 341. Robertson reported a history of persistent and worsening lower back pain since her spinal fusion surgery "four or five years" before the exam. Tr. 341. She said that she can sit for 30-minute intervals before needing to change positions due to pain. Tr. 341. Prolonged periods of standing were also difficult—she can stand for several hours in different intervals, taking breaks. Tr. 341. Robertson was born without a left thumb, and she had a limited ability to fully extend her left arm "out at the level of her elbow." Tr. 341. She said that she could care for herself

---

[2]     The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

independently, drive a car, and ambulate without an assistive device. Tr. 341. She could go up and down stairs, but often used a railing. Tr. 341. She tried to avoid lifting and carrying due to back pain. Tr. 341. Robertson's pain level varied depending on her activity level and she controlled her pain with over-the-counter Tylenol. Tr. 341. Robertson had in the past tried working three different jobs, but they all required too much physical activity and she couldn't tolerate them for "any prolonged period of time." Tr. 341.

Dr. Borys's exam findings showed that Robertson could bend forward to approximately 60 degrees of spinal flexion but couldn't "fully touch her toes." Tr. 342. She could get on and off the exam table without assistance. Tr. 342. She had a normal gait, station, and pace, and could heel-to-toe walk without imbalance. Tr. 342. Robertson's fine motor skills—grasping, pinching, and writing—were normal, and her missing thumb affected dexterity in her left, non-dominant hand. Tr. 341–42. Robertson had normal curvature in her cervical, thoracic, and lumbar spine. Tr. 342. She had mild tenderness to palpation along her entire spine, most notably in her lower back. Tr. 342–43. She showed no focal neurological deficits. Tr. 343. She had full muscle strength in all areas tested, other than her thoraco-lumbar spine, which Dr. Borys rated four-out-of-five. Tr. 344. Robertson had a diminished range of motion in her lumbar spine and right elbow. 346–48. A lumbar x-ray that day showed mild dextroconvex (right-curving) scoliosis status post thoracolumbar spinal fusion. Tr. 340.

4

Dr. Borys opined that Robertson required "modest restrictions" and couldn't work "in a workplace environment on a standard schedule." Tr. 343. Robertson "may be able to complete tasks the average amount, [but] the ability of standing for several hours every day sequentially is going to be difficult for her." Tr. 343. She "may be able to tolerate light to sedentary work but at a moderately reduced number of hours per week" with rest periods in between. Tr. 343. Dr. Borys wrote that Robertson couldn't tolerate 40 work hours a week, even at the sedentary level, "because … the repetitiveness of physical activity is also going to be difficult for her." Tr. 343. She recommended that Robertson avoid jobs requiring frequent "bending down with lifting restrictions of less than 5–10 pounds and decreasing the physical activity as this is going to likely exacerbate her pain further." Tr. 343. As for Robertson's missing left thumb, Dr. Borys found that it hadn't caused "significant deficits" for Robertson, but "tasks that are going to require fine motor skills and dexterity are going to be limited for her slightly in this regard." Tr. 343.

In January 2022, Robertson visited Family Care Plus. Treatment notes show that Robertson denied fatigue or muscle, joint, or bone problems. Tr. 384, 395, 416, 419, 433, 436. She reported a normal activity level. Tr. 433. She stated that she limped due to her scoliosis surgery, Tr. 415, 430, but the treatment note says that she had a normal gait and station, Tr. 432–433. Robertson's exam showed normal muscle tone and motor strength, normal

movement of all extremities, and normal curvature of the thoracolumbar spine. Tr. 432–33.

Later that month, Robertson saw Sue Espinal, M.D., for a new patient gynecologic examination. Tr. 446. That day, Robertson reported chronic back pain but denied joint and muscle pain. Tr. 449. She denied weakness. Tr. 449.

*Education records*: In September 2009, at the start of twelfth grade, Robertson qualified for special education services due to a learning disability in math. Tr. 293, 295. Robertson demonstrated "significant difficulties and a lack of progress despite interventions" and had failed Algebra four times. Tr. 296, 310. Her working memory score indicated that she "may have difficulty solving multistep problems because she may not be able to simultaneously recall and process several pieces of information without forgetting." Tr. 296. The evaluators assessed Robertson as likely to benefit in math class from having procedures provided to her in a step-by-step fashion in the form of checklists to which she can refer. Tr. 323. Her "measured ability level suggest[ed]" that she would "benefit from mastery of one operation at a time with applications clearly identified, instead of being presented with a variety of types of problems." Tr. 323.

Robertson graduated in June 2010. Tr. 293.

*Mental conditions:* In February 2021, consultative examiner Dr. Borys indicated that Robertson had normal cognition. Tr. 342.

6

January 2022 treatment records from Family Care Plus show that Robertson denied having an anxiety disorder, depression, or any other mental disorder. Tr. 384–85, 395–96, 416, 419–20, 433. She indicated that she was "happy/content" and had a normal activity level. Tr. 416, 433. A mental status exam found that Robertson displayed a normal mood and affect, normal recent and remote memory, and good judgment. Tr. 432. She was described as active and alert. Tr. 432.

Later that month, Robertson saw Dr. Espinal and reported a dysphoric mood.[3] Tr. 449. She appeared nervous and anxious. Tr. 449. She denied suicidal ideation. Tr. 449. Dr. Espinal stated that Robertson had a normal mood and thought content. Tr. 450.

*State agency opinions*[4]

In September 2021, Sai Nimmagadda, M.D., reviewed Robertson's record and assessed Robertson's physical residual functional capacity (RFC).[5]

---

[3]    Dysphoria is disquiet, restlessness, or malaise. *See* Dorland's Illustrated Medical Dictionary 573 (33rd ed. 2020).

[4]    When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5]    An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235,

Tr. 60–62. Dr. Nimmagadda opined that Robertson could perform light work—occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 60. Dr. Nimmagadda also assessed Robertson with postural, environmental, and left-hand limitations. Tr. 61. In November 2021, Leon Hughes, M.D., reviewed the record and agreed with Dr. Nimmagadda's opinion. Tr. 76–78.

In September 2021, Ellen Rozenfeld reviewed Robertson's record for mental health conditions. Tr. 66. Rozenfeld found that Robertson had mild limitations in four broad areas of mental functioning and, as a result, Robertson did not have a severe mental impairment. Tr. 66. Rozenfeld did not assess any mental RFC limitations. Tr. 66, 69. In November 2021, Kristen Haskins, Psy.D., reviewed the record and agreed with Rozenfeld's opinion. Tr. 83, 86.

*Hearing testimony*

Robertson, who was represented by counsel, testified at the telephonic administrative hearing held in April 2022. Robertson stated that she didn't have a driver's license and that her mother typically drove her places. Tr. 35. Robertson explained that she passed the written portion of the driver's test but not the driving portion, and she hadn't tried again to pass the test. Tr. 35.

---

239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

When asked what the main issues are that prevent her from working, Robertson answered that her spine problem bothers her the most. Tr. 40. Her past fusion surgery causes pain. Tr. 40. At times she takes Ibuprofen and Tylenol, "but it only overholds so much" and Tylenol causes stomach upset. Tr. 40, 45. Robertson's next biggest issue is her left arm, which she can't fully extend. Tr. 40. It prevents Robertson "from lifting certain things, especially on the heavier side." Tr. 40. Finally, her missing left thumb makes it difficult for her to pick up certain things. Tr. 40.

Robertson explained that she can stand and walk, but these activities cause a lot of pain in her back. Tr. 40. Bending over "becomes an issue," so she has to squat instead. Tr. 40. Robertson estimated that she could walk "a good 10, 15 minutes" on a flat surface. Tr. 41. She could stand for 10 to 15 minutes. Tr. 48. Robertson can sit for 15 to 20 minutes before needing to stand up. Tr. 48. If she sits too long her body locks up. Tr. 48. She could lift about 30 to 40 pounds. Tr. 41. On a typical day, Robertson walks around the house, including up and down stairs; prepares a simple breakfast; performs chores like sweeping, dusting, and "pick[ing] up a room"; and cleans and dresses herself. Tr. 41–42. She likes to write in her journal and sing. Tr. 44. She has no issues managing money. Tr. 48. She leaves the house a few times a week with her mom to go shopping or run an errand. Tr. 48–49.

Robertson said that she has never been prescribed medications. Tr. 43. She never tried physical therapy. Tr. 43–45. Other than taking over-the-

counter medication for pain, Robertson takes a hot bath or shower two or three times a week. Tr. 45.

Robertson stated that she suffers from depression and anxiety and attends therapy telephonically. Tr. 45–46. She hasn't been prescribed medication. Tr. 46. She has panic attacks and "mental breakdowns." Tr. 47. She used to have panic attacks about once or twice a week, but at the time of the hearing she had them three or four times a month. Tr. 47. She uses techniques she learned in therapy to help manage her panic attacks. Tr. 47.

The ALJ confirmed with the vocational expert Robertson's past relevant work as a cashier and cleaner. Tr. 50–51. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work history as Robertson could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 51–52. The vocational expert answered that such an individual could not perform Robertson's past work but could perform the following jobs: order clerk, weight tester, and addresser. Tr. 52.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022 (3D).
>
> 2. The claimant has not engaged in substantial gainful activity since May 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant had the following severe impairments: history of scoliosis with spinal fusion, degenerative disc disease, congenital missing left thumb, arthritis/dysfunction of left elbow (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can frequently finger and handle with the left upper extremity. She can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch and crawl. She can never work at unprotected heights and never use moving mechanical parts. She can have occasional exposure to humidity, wetness, and vibration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [i]n … 1990, and was 29 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there

are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18–25.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*

13

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1.    The ALJ considered Robertson's mental limitations when assessing the RFC*

At step two, the ALJ listed Robertson's severe impairments—history of scoliosis with spinal fusion, degenerative disc disease, congenital missing left thumb, and arthritis/dysfunction of left elbow. Tr. 19. Then the ALJ listed Robertson's non-severe impairments, including Robertson's depression,

14

anxiety, and learning disorder. Tr. 19. The ALJ stated that Robertson's mental impairments "do[] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Tr. 19. He explained that to make this finding, he considered the four broad areas of mental functioning set out in the disability regulations and known as the "'paragraph B' criteria." Tr. 19 (citing 20 CFR, Part 404, Subpart P, Appendix 1). The ALJ found that Robertson had a mild limitation in all four areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Tr. 19–20.

Robertson asserts that when an ALJ assesses a claimant's RFC, the ALJ must consider all of the claimant's impairments, severe and non-severe. Doc. 10, at 9. She argues that "there is no indication that [the ALJ] gave any consideration to his own step two findings of mild mental limitations in determining the RFC." *Id*. at 10; Doc. 14, at 1.

The ALJ considered Robertson's non-severe, mental limitations when he formulated Robertson's RFC. In the portion of his decision explaining his RFC findings, the ALJ commented that although Robertson testified that she received "some [mental health] counseling, … there was no objective evidence her mental functioning was significantly limiting her daily functioning."[6] Tr.

---

[6]      In the portion of his decision explaining his step two findings, the ALJ remarked that "counsel did not provide any of the claimant's mental health treatment records." Tr. 19–20. Robertson has not alleged any error as to this statement or the absence of these treatment records.

23. And the ALJ cited as persuasive the state agency psychologists' opinions that Robertson didn't have a severe mental impairment. Tr. 23. The psychologists also didn't assess any mental RFC limitations. Tr. 62, 69, 78, 86. So the ALJ's decision contains statements showing that the ALJ considered Robertson's non-severe mental impairments when he formulated Robertson's RFC.

Robertson states, "[c]onspicuously absent is any explanation for why the mild mental limitations the ALJ found at step two were not included in the RFC." Doc. 10, at 10. But the ALJ isn't required to explain "why the mild mental limitations the ALJ found at step two were not included in the RFC." Rather, legal authority requires the ALJ when assessing an RFC to:

> consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

Soc. Sec. Ruling 96-8P, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *see Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). Here, the ALJ expressly considered Robertson's mental limitations when assessing the RFC, as legal authority requires.[7] Tr. 23.

---

[7] Robertson hasn't argued that the ALJ erred by not including mental limitations in the RFC—only that the ALJ *failed to explain* why he didn't

In support of her argument, Robertson relies on *Tharp v. Comm'r of Soc. Sec. Admin.*, No. 1:21-cv-135, 2022 WL 2195056, at *16 (N.D. Ohio Apr. 11, 2022), *report and recommendation adopted*, 2022 WL 2192941 (N.D. Ohio June 17, 2022). Doc. 10, at 10–11; Doc. 14, at 2. But *Tharp* is inapposite. First, the non-severe impairment in *Tharp* was kidney stones; *Tharp* didn't state that an ALJ must explain why the mild mental limitations the ALJ found at step two were not included in the RFC. 2022 WL 2195056, at *16. Second, in *Tharp* the ALJ didn't consider the claimant's kidney stones at all when assessing the RFC. *Id.* ("the Commissioner has not identified specific language in the ALJ decision which states that he considered limitations associated with her kidney stones in assessing the RFC, and the undersigned was unable to independently locate language to this effect."). Here, by contrast, the ALJ's decision contains specific language stating that the ALJ considered limitations associated with Robertson's non-severe mental impairments when assessing the RFC.[8] Tr. 23.

---

include mental limitations in the RFC. Nevertheless, an ALJ is notably not required to include in an RFC any of the ALJ's mild *paragraph B criteria* findings from step two. *See, e.g., Zingale v. Kijakazi*, No. 1:20-cv-2197, 2022 WL 824148, at *12 (N.D. Ohio Mar. 18, 2022) (collecting cases).

[8]     In her brief, Robertson alleges that the ALJ's error is "not harmless" and cites *Tharp* and other cases. Doc. 10, at 10–11. In *Tharp*, the claimant challenged the ALJ's finding at step two, so the court applied a "harmless error" standard and looked at whether the ALJ considered the non-severe impairment when assessing the RFC. 2022 WL 2195056, at *15. Here, Robertson doesn't challenge the ALJ's step two finding, so the *harmless error* standard that *Tharp* applied isn't implicated.

Finally, Robertson argues that the ALJ's hypothetical question to the vocational expert was faulty because the question didn't contain the "mild mental limitations" that the ALJ assessed at step two. Doc. 10, at 12. But the ALJ's hypothetical question to the vocational expert need only include the limitations that the ALJ assessed in the RFC, along with the claimant's age, education, and work experience. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). That is what happened here. *See* Tr. 50–52. Because the ALJ didn't include mental limitations in the RFC, the ALJ wasn't required to include mental limitations in the hypothetical question that he posed to the vocational expert. *See Webb*, 368 F.3d at 633.

### 2. *The ALJ sufficiently discussed the supportability and consistency factors when evaluating the consultative examiner's opinion*

Robertson argues that the ALJ failed to articulate the supportability and consistency factors when he evaluated Dr. Borys's opinion. Doc. 10, at 13; Doc. 14, at 3.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical

18

opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The ALJ detailed Dr. Borys's findings, including Dr. Borys's opinion that Robertson couldn't work "in a workplace environment on a standard schedule" or 40 hours a week "even at sedentary work." Tr. 23. Then the ALJ stated:

> The opinion from the consultative physician was not persuasive since the conclusion overstated the claimant's limitations, and not consistent with the objective findings on the examination (3F). However, the limitations in the claimant's ability to use her left upper extremity was accommodated and included in the residual functional capacity.

Tr. 23.

Robertson argues that the ALJ didn't "indicate what objective findings on examination he considered in rejecting Dr. Borys's opinion." Doc. 10, at 14. Robertson points out that on exam, Dr. Borys found Robertson to have spinal tenderness to palpation, four-out-of-five thoraco-lumbar strength, and reduced lumbar flexion. Doc. 10, at 14–15 (citing Tr. 344, 346). But the ALJ recounted those findings in his decision, just before the passage cited above. Tr. 22 (ALJ commenting that Robertson's exam findings showed limited spinal flexion; midline spinal tenderness, most notable in the lower lumbar spine; and a limited range of motion in her lumbar spine).

The ALJ also pointed out that Robertson had a normal gait, station, and pace; normal spinal curvature; no focal deficits; full strength in her legs; and negative straight leg raise testing. Tr. 22. The ALJ noted that Robertson completed heel-to-toe walk without imbalance and got on and off the exam table without assistance. Tr. 22. The ALJ remarked that Robertson's lumbar x-ray taken that day showed "mild dextroconvex scoliosis with remote post fusion at the thoracolumbar junction" and no other abnormalities. Tr. 22. The ALJ concluded, "[w]hile the claimant may have some difficulty performing some physical activities due to pain, there was no evidence to support the assertion she could not perform competitive employment." Tr. 22. This is sufficient indication of what objective exam findings the ALJ considered when he found unpersuasive Dr. Borys's opinion. *See, e.g., Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) (the ALJ's brief explanation

20

discounting a medical opinion, in conjunction with the ALJ's discussion of the doctor's treatment notes and exam findings elsewhere in the decision, satisfied the articulation requirement for opinion evidence); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (same)[9]; *Kraig v. Kijakazi*, No. 1:21-cv-1253, 2022 WL 4232692, at *9 (N.D. Ohio Sept. 14, 2022) (ALJ's evaluation of opinion evidence read "in the context of the decision as a whole" contained sufficient articulation for discounting the opinion) (collecting cases).

The ALJ also explained elsewhere in his decision:

> As of the alleged onset date and thereafter, the claimant did not receive any treatment for her back or elbow pain. She did not attend any physical therapy or receive any assessment from pain management specialist for these conditions. In addition, the claimant was not taking any medication for pain (10E: Testimony).
>
> ***
>
> At the medical appointment in February 2022 the claimant had normal gait, ambulating normally (4F). The claimant did not receive any treatment for her back or elbow pain. The claimant admitted she was not receiving any medical treatment for pain and was not taking any prescribed medication (Testimony: 9E).
>
> Furthermore, despite her pain, the claimant was able to perform a wide array of daily activities. The

---

[9]     In *Chicora* and *Crum*, the former regulations governing treating physician opinions applied to the claimant's disability application. *Chicora*, 852 F. App'x at 969–70; *Crum*, 660 F. App'x at 456. Those former regulations were more demanding than the current ones. *See, e.g., Kraig v. Kijakazi*, No. 1:21-cv-1253, 2022 WL 4232692, at *8 (N.D. Ohio Sept. 14, 2022). So there is nothing to suggest that the approach endorsed under the former regulations—to read the ALJ's decision as whole—wouldn't apply to the current regulations. *See id.*

> claimant completed household chores and grocery
> shopped which involved standing, walking, lifting,
> and carrying. In addition, she enjoyed several
> hobbies including writing in her journal and singing
> (Testimony). As such, the evidence in the record,
> showed the claimant could perform sedentary work
> as described herein (3F: 4F).

Tr. 22. Robertson doesn't challenge these findings. Her assertion that the ALJ "does not explain how he considered any other evidence in the record when making his determination," Doc. 20, at 14, is not persuasive because the ALJ explained how he considered the other evidence in the record. Tr. 22.

Robertson contends that "the ALJ provides no insight as to *why* he found that [Dr. Borys's] opined limitations were 'overstated.'" Doc. 10, at 15. But the ALJ recounted Robertson's normal exam findings and mild x-ray findings during Dr. Borys's exam. Tr. 22. The ALJ also cited other evidence in the record—Robertson's normal exam findings at another appointment, the lack of treatment and prescribed medication, and Robertson's daily activities. Tr. 22. These explanations are sufficient to understand why the ALJ found that Dr. Borys overstated Robertson's limitations when Dr. Borys opined that Robertson couldn't perform full-time work even at the sedentary level. Tr. 23. And the ALJ's reliance on other evidence in the record is relevant to the consistency factor. *See* 20 C.F.R. § 416.920c(c)(2) (defining *consistency* as whether the opinion is in line with other evidence in the record). So Robertson's argument that the ALJ didn't address the consistency factor, Doc. 10, at 16, fails. *See Cormany*, 2022 WL 4115232, at *5 ("Although the ALJ did not use

the words 'supportability' and 'consistency' in the decision, this omission does not necessarily mean that the ALJ did not consider these factors…. To the contrary, reading the decision as a whole, the Court finds that the ALJ considered both the supportability and consistency of Dr. Iler's opinion in determining that it was 'not persuasive.'").

**Conclusion**

For the reasons explained above, the Commissioner's decision is affirmed.

Dated: December 1, 2023

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge